## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE, FLORIDA
## CASE NO.

**SCOTT ISRAEL,**
> **As the Elected Sheriff of**
> **Broward County, Florida,**
> **Plaintiff,**

**versus**

**GOVERNOR RON DESANTIS,**
> **In His Official Capacity as**
> **Governor of Florida, and**

**BILL GALVANO,**
> **In His Official Capacity as**
> **President, Florida Senate,**
> **Defendants.**

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Scott Israel, in his capacity as the elected Sheriff of Broward County, Florida, seeks declaratory and injunctive relief against Governor Ron DeSantis and President Bill Galvano in their respective official capacities as Governor and Senate President of the State of Florida. He asks this court to declare that that his removal from office by the Florida Senate on October 23, 2019, following his suspension by the Governor on January 11, 2019, contravenes due process of law and is therefore

1

unconstitutional. Sheriff Israel seeks an order directing his return to his elected position as Broward County Sheriff or, alternatively, an order directing the Florida Senate and the Governor to satisfy the constitutional requirements of due process in connection with executive efforts to suspend his from office and legislative review of a suspension.

This federal complaint follows the due process-deficient proceedings in the Florida Senate culminating with the Report and Order of the Florida Senate issued October 23, 2019, that "removed" Sheriff Israel from the Office of Sheriff of Broward County, Florida. Those legislative proceedings ignored and rejected due process principles of notice and an opportunity to be heard by changing the legislative rules applicable to reviewing the Governor's suspension order once it became apparent to the Senate legislative majority that the Governor had failed to present facts supporting his suspension decision.

The changing rules to satisfy the Governor's interests at the due process expense of Sheriff Israel's property and liberty interests was just an inkling of the constitutional deprivations that permeated this removal process. The constitutional deprivations became even more evident when the Florida Senate, in derogation of its established and noticed

2

procedures, considered and relied on new information that had never been presented by the Governor in the Senate proceedings as support for the suspension, and had not been noticed to Sheriff Israel.[1] The Florida Senate considered allegations that the Governor expressly disclaimed and withdrew from consideration during the administrative proceedings scheduled by the Senate.[2] In its process of reviewing the suspension, the Senate members extensively relied on materially false information, speculation, and innuendo in reaching its decision to remove Sheriff Israel from office, all of which were not presented to Sheriff Israel in advance of the Senate proceeding.

In sum and substance, the suspension and removal proceedings were little more than a sham and mockery of fairness and due process, thereby subverting the will of the voters of Broward County who elected

---

[1] The Special Master's pre-hearing instructions for the scheduled trial made plain that all evidence was to be disclosed to the parties in advance of the trial, and the parties were to supply a description of all evidence intended to be presented at trial (Attachment U).

[2] As reflected in the Special Master Trial Transcript, on page 73, the Governor's Office expressly removed the Broward County radio communications system issue from the ambit of the suspension review (Transcript Volume 1, page 73, June 18, 2019). The complete Special Master Trial Transcript is included as an attachment to the complaint (Attachment YY).

Sheriff Israel to a four-year term expiring in November 2020. Despite the constitutional demands for due process and fairness, the Governor and the Florida Senate engaged in a highly partisan removal of a democratically elected Sheriff under circumstances that denied Sheriff Israel and the citizens of Broward County the fundamental rights to choose public officials and hold public office as conferred by the United States Constitution.

## I.   BASIS FOR INVOKING JURISDICTION OF THE COURT.

1)   This is an action pursuant to 42 U.S.C. §1983 for deprivation of civil rights under color of law, seeking equitable, declaratory and injunctive relief challenging the suspension and removal of Sheriff Scott Israel from elected office in violation of due process requirements of the U.S. Constitution. This action challenges the constitutionality of the Florida proceedings that suspended and removed Sheriff Israel from office pursuant to Art. IV, § 7 of the Florida Constitution (suspension and removal from office), Florida Statues Chapter 112, Part V (suspension and removal, §§112.40, 112.41, 112.42, 112.43, 112.44 112.45, 112.46, 112.47, 112.48), and Florida Senate Rule 12.9 (procedure upon receipt of executive suspension).

4

2)  The Fourteenth Amendment to the U.S. Constitution guarantees to every person the right to due process of law in every instance involving the deprivation of "life, liberty, or property …"

3)  Sheriff Israel has a clear "liberty" and "property" interest in the Office of Sheriff of Broward County to which he was elected by the people of Broward County for a four-year term expiring in November 2020. *See Reams v. Scott*, 2018 WL 5809967, *1 (N.D. Fla. November 6, 2018) (liberty and property interest in elected clerk of court position); *Snipes v. Scott*, 2019 WL 163352, *3 (N.D. Fla. November 10, 2019) (liberty and property interests reposed in position of elected Supervisor of Elections).

## II.   JURISDICTION AND VENUE.

4)  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, §1343, §2201, §2202 and 42 U.S.C. §1983, in that this action seeks to address the deprivation under color of the laws, statute, regulations, customs and usages of the defendants in their capacities as officials of the State of Florida as they execute, administer and enforce the suspension and removal provisions of Florida law in a manner contrary to the rights, privileges, or immunities secured by the United

5

States Constitution and by Act of Congress.

5) This Court has personal jurisdiction over the defendants because they acted under the color of law, policies, customs, and/or practices of the State of Florida within the geographic confines of the State of Florida.

6) Venue is proper pursuant to 28 U.S.C. §1391 because the defendants execute, administer, and enforce the executive suspension and removal laws at issue here and because the events and conduct giving rise to this action take place in this district and also impact this district as well as the Southern District of Florida in which Sheriff Israel presided as Broward County Sheriff and wherein the Broward electors reside.

7) Florida Supreme Court decreed that Sheriff Israel has no recourse to the Florida courts following a Senate removal decision. The Supreme Court explained in *Israel v. DeSantis*, 269 So. 3d 491, 497 (Fla. 2019):

> The Constitution reserves to the Senate the sole responsibility for reviewing the evidence supporting the Governor's executive order of suspension, and it is the constitutional role of the Senate to consider whether the suspended officer merits removal or reinstatement.

6

## III.   FACTUAL ALLEGATIONS.

8)     Scott Israel was elected as the 16th Sheriff of Board County in 2012. Sheriff Israel, re-elected as Sheriff to serve a 4-year-year term in 2016, served as the Broward Sheriff until his suspension by Governor DeSantis on January 11, 2019, through Executive Order 19-14 (Attachment A).

9)     Shortly after taking office, Governor DeSantis issued Executive Order 19-14 on January 11, 2019, immediately suspending Broward County Sheriff Scott Israel for neglect of duty and incompetence in connection with two mass shooting events in Broward County that occurred before the Governor's election: (1) the January 6, 2017 shooting at Fort Lauderdale-Hollywood International Airport that resulted in the deaths of five (5) people (FLL Airport Shooting);  and (2) the February 14, 2018 shooting at Marjory Stoneman Douglas High School that resulted in the deaths of seventeen (17) students and staff (MSD Shooting).

10)    As authorized by Article IV, § 7(b) of the Florida Constitution, Sheriff Israel on January 29, 2019, requested Senate review of his suspension (Attachment E).

7

11)    Pursuant to Senate Rule 12.8, Senate President Galvano appointed J. Dudley Goodlette as Special Master to receive evidence and make recommendations to the Florida Senate about Sheriff Israel's suspension (Attachment D). The ensuing proceedings before the Special Master were evidentiary in nature, with the parties responsible for presenting all evidence elide upon.

12)    At a Case Management Conference on February 7, 2019, Sheriff Israel requests a Bill of Particulars of the Governor's suspension order as authorized by Senate Rule 12.9(3). Governor DeSantis furnished a Bill of Particulars and Witness List on February 25, 2019 (Attachments H & I).

13)    Challenging the Governor's authority to order the suspension, Sheriff Israel filed a *Quo Warranto* petition in the Circuit Court of the Seventeenth Judicial Circuit (Broward County) on March 7, 2019. *Sheriff Israel v. Governor Ron DeSantis*, Circuit Case No. CACE 19-005019 (Broward County). On April 4, 2019, after holding a hearing on the *quo warranto* petition, the Circuit Court entered a Final Order of Dismissal and denied relief. The Sheriff sought appellate review to the Fourth District Court of Appeal in Case No. 4D19-0970, which then granted the

8

Governor's request for pass-through jurisdiction to the Florida Supreme Court as a matter of great public importance. On April 23, 2019, after briefing by the parties, the Florida Supreme Court denied *quo warranto relief. Israel v. DeSantis*, 269 So. 3d 491 (Fla. 2019). The Florida Supreme Court expressly advised on the role of the Senate in reviewing the suspension order, 269 So. 3d at 497:

> The Constitution reserves to the Senate the sole responsibility for reviewing the evidence supporting the Governor's executive order of suspension, and it is the constitutional role of the Senate to consider whether the suspended officer merits removal or reinstatement.

14)   Senate proceedings resumed upon issuance of the Supreme Court mandate on May 16, 2019 (Attachments P & Q).

15)   The Special Master held a prehearing case management conference on June 5, 2019 (Attachment T). In accordance with the prehearing schedule, the parties exchanged witness and exhibit lists (Attachment W), completed pre-trial depositions (Attachments QQ, RR, SS, TT, UU, VV, WW, and XX), furnished exhibits (Attachments OO & PP), and submitted their bench memoranda (Attachments LL & MM). During the discovery process, the Governor expressly disclaimed any reliance on, and withdrew from consideration, the allegation that Sheriff

Israel was responsible for the Broward County emergency communications system (Attachment YY, p. 73, Volume 1, June 18, 2019).

16)   The Special Master presided over a 2-day final hearing trial on June 18-19, 2019, during which the parties (Governor DeSantis and Sheriff Israel) were provided with the opportunity to present all relevant information and evidence, cross-examine witnesses, and make argument. The Governor called no witnesses, while Sheriff Israel presented four (4) witnesses, including himself, and introduced the deposition transcripts of nine (9) witnesses. The parties' exhibits, numbering more than fifty (50) documents, were entered into the record as evidence. The witnesses testifying at the final hearing were: BSO Colonel Jack Dale (Retired), BSO Detective John Curcio, former BSO Executive Director Robert Pusins, and Sheriff Israel. The transcript and video link of the Special Master trial are attached as Attachments YY & ZZ. The deposition witnesses were: James Polan, Kevin Shults, Edward Grant, Steve Geller, Michael DiMaggio, Jesse Madrigal, James Diefenbacher, Steve Robson, and Steve Kinsey. All deposition transcripts included as attachments to the complaint.

17)     The transcript of the Special Master final hearing was made available to the parties on July 9, 2019, after which the parties submitted their Proposed Recommended Orders (Attachments AAA & BBB).

18)     The Special Master completed and submitted the final Report and Recommendation of Special Master on September 24, 2019 (Attachment CCC), recommending as follows, at p. 33-34):

> Consistent with the foregoing discussion, I recommend:
> 1. The Florida Senate confirm the President's appointment of the undersigned Special Master in this case.
> 2. The Florida Senate confirm that Executive Order 19-14 and the Governor's Bill of Particulars meets the jurisdictional requirements of the Florida Constitution, statutes, and applicable case law, and that fundamental due process has been afforded to Sheriff Israel.
> 3. The Florida Senate, pursuant to Article IV, Fla. Const. and Fla. Stat. §112.44, REINSTATE Scott Israel to his elected position as the Sheriff of Broward County because the Governor has not proven the specific charges of suspension in Executive Order 19-14.
> 4. The Florida Senate deny Sheriff Israel's request for attorneys' fees and costs.

19)     Upon receipt of the Special Master's Report and Recommendation, the Florida Senate scheduled proceedings for consideration of the Special Master's Report, starting with an October 21, 2019 Rules Committee Meeting and concluding with an October 23, 2019 Senate Floor Debate (Attachments EEE, JJJ, KKK, LLL, & MMM). In

advising the parties of the referral of the Special Master's Report to the Senate Rules Committee for consideration, Rules Committee Chair Benaquisto explained the limited nature of the Senate review, confirming the operative procedure utilized by the parties that the review was not intended to be evidentiary in nature (Attachments FFF & HHH, emphasis added):

> Pursuant to Senate Rule12.7, the matter has been referred to the Rules Committee for its consideration and report. I will notice a Rules Committee meeting for this purpose for Monday, October 21, 2019, from 10:30 a.m. until 6:00 p.m. At this meeting, the Special Master will present his report and answer questions posed by Senators. Each party, or their counsel, will have an opportunity to address the committee for twenty (20) minutes followed by questions. **Please note this is a meeting of the Rules Committee not an evidentiary hearing.** For your convenience, the advisory report of the Special Master is included with this correspondence.

20)   At this point, the evidentiary record of the proceedings on the Governor's suspension was closed, with all record evidence available for consideration by the Senate (Attachment GGG).

21)   But two (2) weeks later, when prompted by the Governor's dissatisfaction with the Special Master's recommendation, the Senate Special Counsel wrote to the parties with advice that "if either party has new information they should submit it for consideration." (Attachment

III). The Senate Special Counsel thereupon identified new information that had been submitted to the Senate, and the Senate President acknowledged the Senate's consideration of previously undisclosed information in the form of a supplemental report of the Marjory Stoneman Douglas High School Public Safety Commission as well as an investigative report by the Florida Department of Law Enforcement (Attachment KKK). Sheriff Israel promptly objected to the Senate's consideration on the eve of the Senate Special Session of any new or supplemental information that had not already been disclosed to the parties and considered by the Special Master (Attachment LLL). Nonetheless, the Senate changed its rules and procedures to allow the submission of additional evidence over Sheriff Israel's objection.

22)     Three (3) days before the Senate Rules Committee review was scheduled to commence, the Governor submitted an additional memorandum in further support of the suspension, presenting new argument and arguable authority that had not been noticed to Sheriff Israel, presented to the Special Master, or made a part of the Special Master record (Attachment NNN).

23)     Despite Sheriff Israel's request to be informed with specificity

13

of all new information to be considered by the Senate in making its reinstatement/removal decision, the Senate proceeded to consider new and previously undisclosed information without affording Sheriff Israel any meaningful opportunity to investigate, contest, or respond to the information. The additional information considered by the Senate included false and inaccurate accusations, information expressly withdrawn by the Governor from consideration as supporting the suspension, speculation, innuendo, emotional arguments by citizens allegedly impacted by the Marjory Stoneman Douglas High School shooting, and arguments that had never been made known to Sheriff Israel.

24)    As representative examples of the Senate's sudden change of the rules and consideration of information that had not been noticed to Sheriff Israel, the October 21, 2019 Senate Rules Committee[3] considered additional highly objectionable material including (1) references to out-of-state decisions concerning the duties and responsibilities of sheriffs under circumstances and procedures not applicable to Florida suspension

---

[3] A draft transcript of the October 21, 2019 hearing of the Senate Committee on Rules is incorporated as Attachment OOO.

14

and removals, (2) consideration of an "alter-ego" doctrine that was never advanced by the Governor, included in the Bill of Particulars, or presented at the Special Master trial, (3) holding Sheriff Israel responsible for the failures of the Broward County emergency radio system despite the Governor having withdrawn that allegation from the suspension decision, (4) consideration of a purported no confidence vote of the Broward Sheriff's Office police union that was never made a part of the Special Master proceedings or included within the Governor's bill of particulars, (5) separate and undisclosed "research" by members of the Florida Senate, (6) personal (and factually incorrect) assertions and arguments made by members of the public whose information was not noticed to Sheriff Israel who had no opportunity to adduce corrective or countervailing information, and (6) unknown but admitted *ex parte* communications by the Governor's Office with individual Senators that were never disclosed to Sheriff Israel and the content thereof was never made a part of the Senate record.

25)    The lack of transparency and notice to Sheriff Israel continued through the Full Senate debate on October 23, 2019), the transcript of which is included at Attachment QQQ. The Senators

considered the Senate Committee hearing, including the public comments that were not part of any prior disclosure and formed no basis for the Governor's suspension decision. Individual Senators discussed and commented on extra-record information, admitted to receiving *ex parte* communications from the Governor's Office, argued that the Broward emergency radio system was a glaring instance of Sheriff Israel's incompetence and negligence despite that accusation having been withdrawn by the Governor, and took into consideration information that had not been considered by the Special Master.

26)   At the conclusion of the debate, the Senate voted to remove Sheriff Israel from office (Attachment SSS)

## IV.   CONSTITUTIONAL PROVISIONS.

27)   The Fourteenth Amendment to the U.S. Constitution provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law.

## V.   RELEVANT FLORIDA LAW.

28)   Article IV, Section 7 of the Florida Constitution provides:

**Suspensions; filling office during suspensions. –**

16

(a) By executive order stating the grounds and filed with the custodian of state records, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor.

(b) The senate may, in proceedings prescribed by law, remove from office or reinstate the suspended official and for such purpose the senate may be convened in special session by its president or by a majority of its membership.

(c) By order of the governor any elected municipal officer indicted for crime may be suspended from office until acquitted and the office filled by appointment for the period of suspension, not to extend beyond the term, unless these powers are vested elsewhere by law or the municipal charter.

29)    Chapter 112, Florida Statutes, provides in pertinent part:

**§112.43 Prosecution of suspension before Senate.**—

All suspensions heard by the Senate, a select committee, or special magistrate in accordance with rules of the Senate shall be prosecuted by the Governor, the Governor's legal staff, or an attorney designated by the Governor. Should the Senate, or the select committee appointed by the Senate to hear the evidence and to make recommendations, desire private counsel, either the Senate or the select committee shall be entitled to employ its own counsel for this purpose. Nothing herein shall prevent the Senate or its select committee from making its own investigation and presenting such evidence as its investigation may reveal. The Governor may request the advice of the Department of Legal Affairs relative to the suspension order prior to its issuance by the

17

Governor. Following the issuance of the suspension order, either the Senate or the select committee may request the Department of Legal Affairs to provide counsel for the Senate to advise on questions of law or otherwise advise with the Senate or the select committee, but the Department of Legal Affairs shall not be required to prosecute before the Senate or the committee and shall, pursuant to the terms of this section, act as the legal adviser only.

### §112.44  Failure to prove charges; payment of attorney's fees or salary.—

In the event any officer suspended by the Governor shall not be removed by the Senate, the officer shall be reinstated, and the Senate may provide that the county, district, or state, as the case may be, shall pay reasonable attorney's fees and costs of the reinstated officer upon his or her exoneration; or the Legislature may at any time after such reinstatement provide for the payment from general revenue funds of reasonable attorney's fees and costs or the salary and emoluments of office from the date of suspension to the date of reinstatement. The appropriation for such fees, costs, and salary and emoluments may be contained in the General Appropriations Act or any other appropriate general act. This part shall constitute sufficient authority for the payment of such attorney's fees and costs as the officer may reasonably have incurred in his or her own defense.

### §112.45  Senate's report; results of prosecution.—

(1) The Secretary of the Senate shall, as soon as reasonably possible following the action of the Senate, file with the Department of State a report of the action of the Senate, including an order signed by the President and the Secretary specifying the action taken by the Senate. The action of the Senate shall become effective immediately upon the filing of the order with the Department of State, and the Department of State shall forthwith deliver copies of such order to the Governor, the officer involved, and the governing

18

body of the county, district, or state, as the case may be. Any such order or any certified copy thereof, under the signature of the Secretary of State, may be recorded in the public records of any county in this state.

(2)   The date of delivery of the order to the Department of State shall be the effective date of the removal or reinstatement, as the case may be, and, should the official be reinstated, he or she shall be entitled to reimbursement for such pay and emoluments of office from the date of suspension to that date, as though he or she had never been suspended, and the order of the Senate, or a certified copy thereof, shall constitute the authority of the county, district, or state, to make such payment for reimbursement.

**112.47   Hearing before Senate select committee; notice.—**

The Senate shall afford each suspended official a hearing before a select committee or special magistrate, and shall notify such suspended official of the time and place of the hearing sufficiently in advance thereof to afford such official an opportunity fully and adequately to prepare such defenses as the official may be advised are necessary and proper, and all such defenses may be presented by the official or by the official's attorney. In the furtherance of this provision the Senate shall adopt sufficient procedural rules to afford due process both to the Governor in the presentation of his or her evidence and to the suspended official, but in the absence of such adoption, this section shall afford a full and complete hearing, public in nature, as required by the State Constitution. However, nothing in this part shall prevent either the select committee or the Senate from conducting portions of the hearing in executive session if the Senate rules so provide.

30)   Florida Senate Rule 12, Suspensions and Removals, provides

as follows:

### 12.9—Procedure upon receipt of an executive suspension

(1) Unless suspension proceedings are held in abeyance, the committee, subcommittee, or special master shall institute action by transmitting a notice of hearing for a prehearing conference or a hearing on the merits within three (3) months after the Secretary of the Senate receives the suspension order. The Governor and the suspended official shall be given reasonable notice in writing of any hearing or prehearing conference before the committee, subcommittee, or special master. If the Governor files an amended suspension order, the attention of the Senate, committee, subcommittee, or special master shall be directed at the amended suspension order.

(2) An executive suspension of a public official who has pending against him or her criminal charges, or an executive suspension of a public official that is challenged in a court shall be referred to the Ethics and Elections Committee, other appropriate committee, or special master; however, all inquiry or investigation or hearings thereon shall be held in abeyance and the matter shall not be considered by the Senate, committee, subcommittee, or special master until the pending charges have been dismissed, or until final determination of the criminal charges at the trial court level, or until the final determination of a court challenge, if any, and the exhaustion of all appellate remedies for any of the above. The committee, subcommittee, or special master shall institute action within three (3) months after the conclusion of any pending proceedings. In a suspension case in which the criminal charge is a misdemeanor, the committee, subcommittee, or special master and the Senate may proceed if the written consent of counsel for the Governor and of the suspended official is obtained.

(3) The committee, subcommittee, or special master may provide for a prehearing conference with counsel for the Governor and the suspended official to narrow the issues involved in the suspension. At such conference, both the

Governor and the suspended official shall set forth the names and addresses of all the witnesses they intend to call, the nature of their testimony, photocopies of all documentary evidence, and a description of all physical evidence that will be relied on by the parties at the hearing. Each shall state briefly what each expects to prove by such testimony and evidence. The suspended official may file with the Secretary, no later than ten (10) days prior to the first (1st) prehearing conference, or no later than the date set by the committee, subcommittee, or special master if no prehearing conference is held, all written defenses or matters in avoidance of the charges contained in the suspension order.

(4) When it is advisable, the committee, subcommittee, or special master may request that the Governor file a bill of particulars containing a statement of further facts and circumstances supporting the suspension order. Within twenty (20) days after receipt of the Governor's bill of particulars, the suspended officer shall file a response with the committee, subcommittee, or special master. Such response shall specifically admit or deny the facts or circumstances set forth in the Governor's bill of particulars, and may further make such representation of fact and circumstances or assert such further defenses as are responsive to the bill of particulars or as may bear on the matter of the suspension.

(5) The Senate may act on the recommendations of the committee, subcommittee, or special master at any time it is sitting but shall do so no later than the end of the next regular session of the Legislature.

(6) Within sixty (60) days after the Senate has completed final action on the recommendation of the committee, subcommittee, or special master, any party to the suspension matter may request the return, at that party's expense, of any exhibit, document, or other evidence introduced by that party. After the expiration of sixty (60) days from the date the Senate has completed final action, the committee, subcommittee, or special master may dispose of such exhibits or other evidence.

31)    The Florida Supreme Court recognized the suspension and removal of an elected official cannot be an arbitrary process subject to the whim and caprice of the Governor or Senate in *State ex rel. Hardie v. Coleman*, 115 Fla. 129, 134, 155 So. 129, 135 (Fla. 1934) (emphasis added):

> The power of the Governor to suspend and of the Governor and the Senate to remove is not an arbitrary one. Both are guarded by constitutional limitations which should be strictly followed. It has been charged that this is an unusual power to vest in the Governor and the Senate, and so it is, but the people have lodged it there. The position of Governor and Senator is one vested with great dignity and responsibility and we are not to presume that these places will be filled by the people with men who do not measure up to the responsibility imposed in them. At any rate the duty imposed should be exercised with great care and caution because, when done, the result is final as no other power is authorized to interfere.

32)    The Florida Supreme Court approved the requirement that a Senate removal from office can only be done based on "evidence" in *Israel v. DeSantis*, 269 So. 3d at 497: "The Constitution reserves to the Senate the sole responsibility for **reviewing the evidence** supporting the Governor's executive order of suspension, …" (emphasis added).

33)    The Florida Constitution guarantees that "[a]ll political

power is inherent in the people." Art. I, §1, Florida Constitution.

## COUNT 1
## DEPRIVATION OF PROPERTY INTEREST IN VIOLATION OF CONSTITIONAL RIGHT TO DUE PROCESS

34)    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs 1-33 as if fully set forth herein.

35)    The Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law.

36)    The executive suspension of an elected public official involves a property right for which due process of law applies.

37)    The suspension and removal of Sheriff Israel by the combined official actions of the Governor and Senate deprived Sheriff Israel of his constitutional right to due process in connection with his property interest in serving the term of office to which he was elected.

38)    "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

39)    As acknowledged by Chief District Judge Walker in *Snipes v. Scott*, 2019 WL 163352, *3 (N.D. Fla. January 10, 2019), "Due process

23

does not mean no process. When it comes to key rights, government officials do not have the luxury of doing whatever they want."

40)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process in his suspension and removal from office in the absence of an ability (1) to know of the allegations and evidence against him, (2) to confront and challenge that evidence, and (3) to have a reinstatement/removal decision based on the evidence.

41)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process in the Senate's shifting of the rules applicable to his suspension review and the Senate consideration of information not disclosed to Sheriff Israel and not part of the record of proceedings on which a decision was required to depend.

42)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Governor's *ex parte* and as yet unrevealed conversations and communications with the Florida Senate and the consideration by Senators of *ex parte* communications and information.

43)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Senate's consideration of allegations specifically withdrawn by the Governor as not being a part of the

24

suspension decision for review.

44)   Sheriff Israel has been denied the fundamental guarantee of fairness and due process by Senate consideration of unproven facts, speculation, and innuendo as a basis for its removal decision.

45)   Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Governor's failure to adduce proof sufficient to establish a stated ground for suspension as set forth in the suspension order and bill of particulars.

46)   Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the failure of the Senate to provide him with reasonable notice and an opportunity to challenge and confront the evidence and information on which it relied for its decision to remove him from office.

47)   Absent the fundamental prerequisites of fairness and due process notice, Sheriff Israel's removal from elected office represents an actionable violation of his due process property interest, from which he must be reinstated to office.

**COUNT 2**
**DEPRIVATION OF LIBERTY INTEREST IN VIOLATION OF**
**CONSTITIONAL RIGHT TO DUE PROCESS**

48)     Plaintiff incorporates by reference each allegation contained in the preceding paragraphs 1-33 as if fully set forth herein.

49)     The Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law.

50)     The executive suspension of an elected public official involves a liberty interest for which due process of law applies.

51)     The suspension and removal of Sheriff Israel by the combined official actions of the Governor and Senate deprived Sheriff Israel of his constitutional right to due process in connection with his liberty interest in serving the term of office to which he was elected.

52)     "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

53)     As acknowledged by Chief District Judge Walker in *Snipes v. Scott*, 2019 WL 163352, *3 (N.D. Fla. January 10, 2019), "Due process does not mean no process. When it comes to key rights, government

officials do not have the luxury of doing whatever they want."

54)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process in his suspension and removal from office in the absence of an ability (1) to know of the allegations and evidence against him, (2) to confront and challenge that evidence, and (3) to have a reinstatement/removal decision based on the evidence.

55)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process in the Senate's shifting of the rules applicable to his suspension review and the Senate consideration of information not disclosed to Sheriff Israel and not part of the record of proceedings on which a decision was required to depend.

56)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Governor's *ex parte* and as yet unrevealed conversations and communications with the Florida Senate and the consideration by Senators of *ex parte* communications and information.

57)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Senate's consideration of allegations specifically withdrawn by the Governor as not being a part of the suspension decision for review.

27

58)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by Senate consideration of unproven facts, speculation, and innuendo as a basis for its removal decision.

59)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the Governor's failure to adduce proof sufficient to establish a stated ground for suspension as set forth in the suspension order and bill of particulars.

60)    Sheriff Israel has been denied the fundamental guarantee of fairness and due process by the failure of the Senate to provide him with reasonable notice and an opportunity to challenge and confront the evidence and information on which it relied for its decision to remove him from office.

61)    Absent the fundamental prerequisites of fairness and due process notice, Sheriff Israel's removal from elected office represents an actionable violation of his due process liberty interest, from which he must be reinstated to office.

## COUNT 3
## INJUNCTIVE RELIEF FOR DUE PROCESS DEPRIVATION OF PROPERTY AND LIBERTY INTERESTS

62)    Plaintiff incorporates by reference each allegation contained

28

in the preceding paragraphs 1-33 as if fully set forth herein.

63)     The Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law.

64)     The executive suspension of an elected public official involves a property right and a liberty interest for which due process of law applies.

65)     The suspension and removal of Sheriff Israel by the combined official actions of the Governor and Senate deprived Sheriff Israel of his constitutional right to due process in connection with his property and liberty interests in serving the term of office to which he was elected.

66)     The suspension and removal of Sheriff Israel by the combined official actions of the Governor and Senate deprived Sheriff Israel of his constitutional right to due process in connection with his property and liberty interests in serving the term of office to which he was elected.

67)     Sheriff Israel has no available remedy at law.

68)     The Sheriff's continued removal from office in violation of due process constitutes irreparable harm and injury to Sheriff Israel and the citizens of Broward County who elected him as Sheriff for a 4-year term expiring in November 2020.

29

69)     An order restoring Sheriff Israel to elected public office is consistent with the public interest.

70)     Sheriff Israel is entitled to an order restoring him to the Office of Sheriff of Broward County.

## V.     REQUESTED RELIEF.

71)     Sheriff Israel request the following relief:

(a)     That the Court assume jurisdiction over the action.

(b)     A declaration, order, or judgment that Sheriff Israel has been denied due process in his property and liberty interests by his removal from the Office of Sheriff.

(c)     An order restoring Sheriff Israel to the Office of Sheriff of Broward County.

(d)     A judgment or order assessing the costs of this action against the defendants.

(e)     A judgment or order awarding the Sheriff Israel his reasonable attorney's fees, costs, and expenses.

## CERTIFICATE OF SERVICE

I certify that on November 22, 2019, a true copy of the foregoing has

been filed via the EM/ECF electronic filing system, which shall serve a

copy via email to the following counsel of record

Nicholas Primrose
Deputy General Counsel
Executive Office of The Governor
400 South Monroe Street, Suite 209
Tallahassee, Florida 32399
Nicholas.Primrose@Eog.Myflorida.Com

Ashley Moody, Florida Attorney General
Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050
oag.civil.eserve@myfloridalegal.com

Bill Galvano, President
Florida Senate
Attention Debbie Brown, Senate Secretary
Suite 405 Capitol
404 S Monroe Street
Tallahassee, FL 32399-1100
brown.debbie@flsenate.gov
LETARTE.CHRISTIE@flsenate.gov

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

*S/ Stuart N. Kaplan*
**STUART N. KAPLAN**
Florida Bar No. 647934
**KAPLAN & PARKER, LLP**
3399 PGA Blvd Ste 150
Palm Beach Gardens, FL 33410-2809
Tel: 561.296.7900
Fax: 561.296.7919
skaplan@kaplanparkerlaw.com